IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

NFC Acquisition, LLC,   Case No. 3:08CV2450

    Plaintiff

v.   ORDER

Comerica Bank, et al,

    Defendants

This is a declaratory judgment action. Plaintiff NFC Acquisition, LLC [NFC] sued defendants Comerica Bank [Comerica], Norwalk Furniture Corporation [Norwalk Furniture] and its wholly owned subsidiaries – Hickory Hill Furniture Corporation [Hickory Hill], Norwalk Furniture Corporation of Tennessee, Norwalk International Wood Products, LLC, Tennessee Wood Resources, LLC and Alliance Trade Partners, LLC [Alliance] [collectively, "Norwalk Defendants"]. After plaintiff filed suit in state court, Comerica removed the case to federal court.

Pending is plaintiff's motion to remand [Doc. 7]. For the reasons discussed below, I grant plaintiff's motion.

1

**Background**

Defendant Norwalk Furniture is an Ohio corporation in the business of furniture upholstery. Since 1997, its financing has come, primarily, through loans from defendant Comerica. Comerica is a Texas banking association with its principal place of business in Texas. As of July, 2008, Norwalk Furniture owed Comerica approximately $10 million.

In an effort to remain viable, Norwalk Furniture sought additional financing from outside sources. Plaintiff NFC entered into business negotiations to discuss acquiring Norwalk Furniture's assets. NFC is a limited liability corporation incorporated in Delaware. Its principal place of business is in Ohio.

On August 4, 2008, NFC, the Norwalk Defendants and Comerica signed a Letter of Intent, in which NFC expressed its desire to assume Norwalk Furniture's obligations to Comerica in exchange for acquiring Norwalk Furniture's assets. The parties also entered into a Subordinated Participation Agreement, in which NFC purchased a $1 million interest in Norwalk Furniture's loans, but one subordinate to Comerica's interest. NFC paid Comerica the required $1 million and acquired the subordinated debt. As part of these negotiations, the Norwalk Defendants and Comerica executed a Forbearance Agreement, dated August 4, 2008, which required Comerica to continue Norwalk Furniture's current financing until the deal with NFC closed.

After executing the Letter of Intent, NFC conducted due diligence of Norwalk Furniture's financial status. In so doing, NFC discovered, allegedly, that Norwalk Furniture insiders had engaged in a series of unlawful fund transfers. Following this discovery, faced with losing its $1 million investment, NFC requested additional time to review the situation and enter into renegotiations. According to NFC, Comerica agreed to provide additional time, but then engaged

in a pattern of conduct interfering with NFC's attempt to complete the acquisition. NFC did not purchase Norwalk Furniture's assets.

On October 3, 2008, Norwalk Furniture filed for bankruptcy in the United States District Court for the Northern District of Ohio.

The same day, NFC sued Comerica in the Huron County, Ohio, Court of Common Pleas. NFC asserts that Comerica knowingly failed to disclose information about Norwalk Furniture's internal activities in an effort fraudulently to induce NFC to infuse funds into the financially distressed Norwalk Furniture, thereby improving Comerica's chances at recovering payment on Norwalk Furniture's monetary obligations. NFC sought a declaratory judgment invalidating the Subordinated Participation Agreement.

On October 10, 2008, NFC amended its complaint by adding the Norwalk Defendants and a cause of action for declaratory relief. This additional cause of action reads:

> In the event this Court enters judgment against Comerica, declaring that the Subordinated Participation Agreement should be rescinded, NFC seeks a declaration from this Court declaring that *any and all agreements, undertakings or obligations* that exist and/or may be claimed or asserted by and between *NFC*, *Norwalk and its Affiliates*, should be null and void and of no effect.

[Doc. 1, Ex. 2] [Emphasis supplied].

On October 14, 2008, NFC issued service of process on Comerica and the Norwalk Defendants. On October 15, 2008, Comerica and Norwalk Furniture were served with process. The remaining Norwalk Defendants were not then served successfully. Comerica immediately filed its notice of removal.

On November 11, 2008, NFC moved to remand the case to state court. On December 30, 2008, I issued an order requiring NFC to "perfect service of process on unserved defendants within

the requisite 120 day period," warning that failure to do so would require dismissal without prejudice on any unserved defendants. [Doc. 20]. Only two of the Norwalk Defendants – Alliance and Hickory Hill – were served within the required time period.[1]

Alliance, a wholly owned subsidiary of Norwalk Furniture, has been defunct and non-operational since 2007.

Hickory Hill, a wholly owned subsidiary of Norwalk Furniture, is in the process of liquidation. On September 17, 2008, Hickory Hill entered into a Trust Mortgage with Norwalk Furniture, in which James V. McTevia of McTevia & Associates, LLC, was appointed Trustee. The Trust Agreement gave McTevia authority to collect and liquidate Hickory Hill's assets and manage its business affairs.

Hickory Hill's only asset is a real estate parcel in Fulton, Mississippi. As part of Norwalk Furniture's bankruptcy proceedings, the Bankruptcy Court approved sale of the Mississippi real estate, which Norwalk Furniture had previously pledged as collateral for its debt to Comerica. In an affidavit, McTevia states that Hickory Hill's assets are encumbered by secured liens and the Trust Mortgage, and its indebtedness to Comerica far exceeds the value of its assets.

Comerica removed this case to federal court on the basis of diversity jurisdiction. Under 28 U.S.C. § 1332, diversity of citizenship exists when no plaintiff and no defendant are citizens of the same state and the amount in controversy exceeds $75,000.

---

[1] Another subsidiary, Tennessee Wood Resources, LLC, returned service on April 1, 2009, past the 120 day deadline.

NFC correctly argues that on the face of its complaint, complete diversity does not exist because the plaintiff and Hickory Hill are both citizens of Ohio.[2] Comerica contends, however, that federal jurisdiction exists because Hickory Hill: 1) has not been timely or properly served; 2) was fraudulently joined; or 3) is an indispensable party.

I disagree. For the following reasons, I find Hickory Hill's presence to destroy diversity.

**Standard of Review**

A defendant may remove any civil action from state to federal court "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). After removal, a plaintiff may bring a motion to remand to state court under 28 U.S.C. § 1447(c).

Comerica, as the removing party, bears the burden of showing that federal jurisdiction exists. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871-72 (6th Cir. 2000); *Jindal v. D.O.C. Optics Corp.*, 208 F.Supp.2d 855, 856 (N.D. Ohio 2002). I must grant NFC's motion to remand if I find that complete diversity jurisdiction or

---

[2] Although Norwalk Furniture is also a non-diverse defendant, its citizenship is immaterial to the jurisdictional question at issue. *See Rigney, Jr. v. Midcon Offshore, Inc.*, 1997 WL 795694, * 1 (E.D.La.) ("A defendant against whom all actions are automatically stayed because of its pending petition for relief in bankruptcy is not properly joined, since the action cannot be pursued against it absent relief from the bankruptcy court.").

Norwalk Furniture sought bankruptcy protection on October 3, 2008, and NFC amended its complaint to name Norwalk Furniture as a defendant on October 10, 2008. Norwalk Furniture, thus, cannot be a proper party before the court, as its bankruptcy status "operates as a stay, applicable to all entities, of – (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). *See also Easley, Jr. v. Pettibone Michigan Corp.*, 990 F.2d 905, 911 (6th Cir. 1993) (finding that "actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances").

federal question jurisdiction do not exist. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Absent diversity of citizenship, federal-question jurisdiction is required" for proper removal to federal court).

Because removal jurisdiction raises significant concerns about federalism, I must resolve "[a]ll doubts regarding the removal petition . . . against removal." *City of Cleveland v. Deutsche Bank Trust Co.*, 571 F.Supp.2d 807, 811 (N.D. Ohio 2008) (citing *Queen ex rel. Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989)).

## Discussion

### 1. Forum Defendant Rule and Service of Process

Under 28 U.S.C. § 1441(b), federal courts have authority to exercise diversity jurisdiction if "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

Referred to as the forum defendant rule, § 1441(b) prohibits removal if the defendant is a citizen of the state in which the suit was filed. *Geffen v. General Elec. Co.*, 575 F.Supp.2d 865, 869 (N.D.Ohio 2008). This rule reflects the belief that even if diversity exists, a forum defendant – a defendant who is a citizen of the state in which it is sued – has no reason to fear state court prejudice. *Lively v. Wild Oats Markets*, *Inc*., 456 F.3d 933, 940 (9th Cir. 2006).

Because Hickory Hill is a forum defendant, NFC contends that § 1441(b) precludes removal.

Comerica, however, urges the court to look to § 1441(b)'s language requiring the forum defendant to be "properly joined and served." Because NFC did not perfect service of process on Hickory Hill until January 15, 2009, ninety days after Comerica filed its notice of removal, Comerica argues that Hickory Hill is not a forum defendant.

6

Comerica's interpretation of §1441(b) suggests that the language "properly joined and served" creates an exception to the forum defendant rule. This argument is not novel; in fact, it has been the topic of much jurisprudential debate with varying success across the country.

I, however, have no need to survey such case law because the Northern District of Ohio recently rejected Comerica's argument in a case of first impression. In *Ethington v. Gen. Elec. Co.*, 575 F.Supp.2d 855, 861 (N.D. Ohio), my colleague, District Judge Dan Aaron Polster, engaged in a thorough review of available case law. He cited a District of New Jersey decision, *DeAngelo-Shuayto v. Organon USA Inc*, 2007 WL 4365311, * 5 (D.N.J.), in which the court held that "a forum defendant cannot remove to federal court even if the forum defendant has not been 'properly joined and served.'" That court explained:

> The result of blindly applying the plain 'properly joined and served' language of § 1441(b) is to eviscerate the purpose of the forum defendant rule. It creates a procedural anomaly whereby defendants can always avoid the imposition of the forum defendant rule so long as they monitor the state docket and remove the action to federal court before they are served by the plaintiff . . . a literal interpretation of the provision creates an opportunity for gamesmanship by defendants, which could not have been the intent of the legislature in drafting the 'properly joined and served' language.

*Id.*

After considering the conflicting case law, Judge Polster "join[ed] the *DeAngelo-Shuayto* line of cases, and in so doing, the Court incorporate[d] and adopt[ed] the well-reasoned, thorough analysis and holdings of Judge Chesler in *DeAngelo-Shuayto* as the basis for the instant ruling." *Ethington, supra*, 575 F.Supp.2d at 864.[3]

---

[3]

In reaching my decision on the forum defendant issue, I am mindful of the dicta in *McCall v. Scott*, 239 F.3d 808, n. 2 (6th Cir. 2001), in which the court stated, "[w]here there is complete diversity of citizenship . . . the inclusion of an unserved resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)." As dictum, this statement is without precedential effect. *See*

7

Comerica contends that *Ethington* is distinguishable because it refers to pharmaceutical defendants. I, however, see nothing in *Ethington* which limits its holding to pharmaceutical defendants.

Comerica also distinguishes *Ethington* on the basis that a forum defendant filed for removal, whereas here, a non-forum defendant filed for removal. Nothing in the text of § 1441(b), however, makes the forum defendant rule dependent on which defendant filed for removal.

In accordance with *Ethington*, I reject Comerica's argument that Hickory Hill's untimely service of process supports its removal petition. *See also Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939) ("the fact that the resident defendant has not been served with process does not justify removal by the non-resident defendant"); *Finley v. Higbee Co.*, 1 F.Supp.2d 701, 703 (N.D. Ohio 1997) ("case law supports the proposition that the failure to serve a defendant who would defeat diversity does not permit a court to ignore that defendant in determining the propriety of removal.") (internal citations omitted).

## 2. Fraudulent Joinder Doctrine

Alternatively, Comerica argues that Hickory Hill's citizenship is immaterial because NFC fraudulently joined Hickory Hill to prevent federal jurisdiction. The fraudulent joinder doctrine is a "judicially created doctrine that provides an exception to the requirement of complete diversity," *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir.1999).

---

*Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 17 (2003) ("Dicta of course have no precedential value."); *Williams v. Anderson*, 460 F.3d 789, 796 (6th Cir.2006) (holding that dicta is not binding precedent). I am persuaded by Judge Polster's well-reasoned and thorough opinion in *Ethington* to follow the course he has taken, rather than the dictum in *McCall*.

8

When a party asserts fraudulent joinder, the inquiry is whether there is at least a colorable claim against the non-diverse party in state court. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir.1994). That requires determining, "whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Id*. "[I]f there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants," the action must be remanded to state court. *Coyne*, *supra*, 183 F.3d at 493. The court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the nonremoving party. *Id*.

The relevant inquiry, therefore, is whether NFC sufficiently plead a colorable claim for a declaratory judgment against Hickory Hill. I find that, for the following reasons, NFC has met this burden.

A declaratory judgment requires: 1) a real controversy between the parties; 2) a justisticable controversy; and 3) a situation where speedy relief is necessary to preserve the parties' rights. *Herrick v. Kosydar*, 44 Ohio St.2d 128, 130 (1975).[4]

Under the Ohio declaratory judgment statute, "any person interested under a . . . written contract, or other writing constituting a contract . . . may have determined any question of construction or validity arising under the. . . contract . . . and obtain a declaration of rights, status, or other legal relations under it." O.R.C. § 2721.03. Moreover, a "contract may be construed by declaratory judgment either before or after there has been a breach thereof." O.R.C. § 2721.04.

---

[4] Because plaintiff asserts claim under the Ohio declaratory judgment act, I look to its elements, rather than those in the federal declaratory judgment act. *See Polyone Corp. v. Nat. Union Fire Ins. Co. of Pittsburgh*, *PA*, 2008 WL 4592927, * 4 (N.D.Ohio) (analyzing claim under the Ohio declaratory judgment statute).

Hickory Hill is a "person interested" under the Subordinated Participation Agreement, Letter of Intent and Forbearance Agreement, such that it has, at least, a colorable claim under the Ohio declaratory judgment statute.

One reason that Hickory Hill is an interested party is because it is a signatory to all three contracts. As such, it is enmeshed in numerous undertakings and obligations with NFC and Comerica. It has rights, interests and obligations under the agreements that a judicial determination could affect either favorably or unfavorably.

The three contracts impose intertwining obligations. In the Letter of Intent, NFC assumed the Norwalk Defendants' liabilities in exchange for the purchase of substantially all of their assets. As a condition of this Letter, however, NFC required the Norwalk Defendants to obtain a Forbearance Agreement with Comerica. Comerica agreed, and entered into a Forbearance Agreement, but conditioned its acceptance on NFC's acquisition of $1 million worth of subordinated debt in the Subordinated Participation Agreement.

Due these intertwining obligations, a court cannot, if there is merit to NFC's declaratory judgment action, rescind the Subordinated Participation Agreement without affecting the other two contracts. Rescission of only one could create a situation where parties incur multiple and inconsistent obligations.

The Ohio Civil Rules seek to avoid such a result.[5] *See* Ohio Civ. R. 19 ("A person . . . shall be joined as a party in the action if . . . (2) he claims an interest relating to the subject of the action is so situated that the disposition of the action in his absence may . . . (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.").

Comerica argues that because the Subordinated Participation Agreement states that it is as contract between Comerica and NFC, Hickory Hill lacks a colorable claim. The Subordinated Participation Agreement, however, references Hickory Hill as both a "borrower" and a "guarantor." It is likely that Hickory Hill has rights under the Agreement as a third-party beneficiary.

Even if Hickory Hill lacks specific rights and obligations under the Subordinated Participation Agreement, however, it has rights and obligations under the Letter of Intent and Forbearance Agreement. The interrelated nature of the three contracts suffice to give rise to a colorable action.

In the Letter of Intent, NFC articulated its intent to purchase substantially all the Norwalk Defendants' assets in exchange for assumption of Norwalk's indebtedness to Comerica. The parties

---

[5] When evaluating whether plaintiff fraudulently joined a defendant, federal courts look to state joinder rules. *Polyone Corp. v. Nat. Union Fire Ins. Co. of Pittsburgh, PA*, 2008 WL 4592927, * 4 (N.D.Ohio) (rejecting claim that the joinder of a defendant in an Ohio declaratory judgment action was fraudulent because joinder was required under Ohio law); *Feller v. National Enquirer*, 555 F.Supp. 1114, 1119 (D.C.Ohio 1982) ("federal courts have examined state law in determining whether a Doe defendant was fraudulently joined"); *see also Accardo v. Lafayette Ins. Co.*, 2007 WL 325368, * 4 (E.D.La) ("because plaintiffs brought their actions in state court and were required to follow state joinder rules when they did so, state joinder rules are the relevant ones to determine the propriety of the joinder of plaintiffs and/or defendants after removal to federal court."); *In re Diet Drugs*, 294 F.Supp.2d 667, 673-74 (E.D.Pa.2003) ("we do not see how federal joinder rules should apply when the issue is fraudulent misjoinder of non-diverse plaintiffs in a state court action so as to defeat our diversity jurisdiction.").

agreed to proceed in good faith toward negotiation and execution of a definitive agreement and to complete the purchase by a specific date. Although the Letter was not binding in its entirety, its conditions, covenants, confidentiality provisions, exclusivity provisions and expense provisions were binding on the parties.

The Forbearance Agreement is also intertwined with the Subordinated Participation Agreement. This Agreement stated that NFC would assume the obligation to pay the liabilities under the loan documents. As these interrelated documents illustrates, the Norwalk Defendants were not mere spectators to the contest between NFC and Comerica.

Notably, Ohio's liberal joinder rules support my holding. Because all three contracts are part of the same transaction and occurrence, NFC is justified in joining the Norwalk Defendants. *See Weisberger v. Home Ins. Co.*, 76 Ohio App.3d 391, 397 (1991) (noting Ohio Civil Rules favor permissible joinder, enabling claims arising out of a single transaction or occurrence to be resolved simultaneously); Ohio Civ. R. 20 (stating that numerous defendants may be joined in an action if asserted against them "any right to relief in respect of or arising out of the same transaction, occurrence, or succession or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action").

Comerica argues that NFC's joinder of Hickory Hill is improper because the rights sought regarding Hickory Hill are contingent on the court's invalidation of the Subordinated Participation Agreement. It contends that NFC is asking the court to resolve a hypothetical and that there is no pending dispute to resolve. *See Mid-American Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 136 (2007) ("Although broad in scope, the declaratory judgment statutes are not without limitation .

. . . the danger or dilemma of the plaintiff must be present, not contingent on the happening of hypothetical future events.").

Based on Ohio Civil Rule 18(b), I disagree. Ohio Civil Rule 18(b) states that when a claim is only cognizable after another has been prosecuted to a conclusion, the two may be joined in a single action. This is precisely the situation at hand. NFC is not relying on a hypothetical factual situation where a party might act in a certain way in the future. Instead, it seeks a second declaration contingent on another judicial ruling.

Comerica also argues that NFC fraudulently joined Hickory Hill in light of the company's poor financial status as a *de facto* bankrupt. Comerica contends that although suing a judgment-proof forum defendant does not in and of itself allow removal, it is evidence that the plaintiff fraudulently joined the defendant. The fact that Hickory Hill is under a trustee's control, is no longer operational, lacks assets to satisfy its obligations and in being liquidated, demonstrates, according to Comerica, that it has no real interest in the litigation.[6]

I disagree: I find Hickory Hill's financial condition irrelevant to my determination. Because NFC does not seek monetary damages from the Norwalk Defendants, Hickory Hill's collectability is immaterial to my subject matter jurisdiction. *See Jocz v. Eichleay Engineers*, *Inc.*, 2008 WL 5157503, *6 (E.D. Pa) (rejecting claim that resident defendants were fraudulently joined parties

---

[6] McTevia's affidavit also states that Hickory Hill has "no right to enforce provisions of that Agreement against a party." [Doc. 33, Ex. 1]. I cannot credit this statement, as it is a legal conclusion reserved for the court. *See A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F.2d 118, 121 (6th Cir. 1981) ("When ultimate facts or conclusions of law appear in an affidavit which also contains the proper subject of affidavit testimony, facts within the personal knowledge of the affiant, the extraneous material should be disregarded, and only the facts considered.").

because they were judgment-proof); *see also* O.R.C. 2721.02 ("Courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed.").

Moreover, I do not find McTevia's representation that Hickory Hill has no intention of participating in this case determinative. *See Bellone v. Roxbury Homes*, 748 F.Supp.434, 437 (W.D.Va. 1990) (accepting, but putting aside non-forum defendant's representation that forum defendant did not intend to respond to the complaint filed in this case).

I, therefore, conclude that Hickory Hill was not fraudulently joined.

### 3. Rule 21: Dispensable Parties

Comerica also contends that federal jurisdiction exists because Hickory Hill is a dispensable or nominal party.

Under Rule 21 of the Federal Rules of Civil Procedure, I can retain jurisdiction by severing claims against nondiverse dispensable defendants.[7] *See Newman-Green, Inc. v. Alfonso-Larrain*, 490 U.S. 826, 832 (1989) ("[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered."); *Soberay Mach. & Equip. Co. v. MRF Ltd.*, 181 F.3d 759, 763 (6th Cir. 1999) ("[I]t is appropriate to drop a nondiverse and dispensable party from litigation in order to achieve diversity."); *Safeco Ins. Co. v. City of White House*, 36 F.3d 540, 545 (6th Cir. 1994) ("Rule 21 of the Federal Rules of Civil Procedure permits a district court to retain diversity jurisdiction over a case by dropping a

---

[7] When assessing a claim of fraudulent joinder, I rely on the Ohio Rules of Civil Procedure because even though the ultimate question is whether federal jurisdiction exists, the analysis relies on a determination of whether the defendant was a proper party to a state court action. Conversely, when assessing whether a defendant is a dispensable party, I rely on the Federal Rules of Civil Procedure. Although the ultimate question is also whether federal jurisdiction exists, it is not contingent on whether the plaintiff had a colorable claim in state court.

14

nondiverse party if that party's presence in the action is not required under Federal Rule of Civil Procedure 19."); *Shattuck v. North British & Mercantile Insurance Co.*, 58 F. 609, 610 (8th Cir. 1893) (noting that nominal or formal parties, being neither necessary nor indispensable, are not required to join in the petition for removal).

To determine whether to drop Hickory Hill, I must ascertain whether it is an indispensable party. To make that decision, I am to follow a two-step process under Fed. R. Civ. P. 19.

I first assess under Rule 19(a) whether it is necessary for just adjudication. A party is necessary if: "(1) complete relief cannot be given to existing parties in [its] absence; (2) disposition in [its] absence may impair [its] ability to protect [its] interest in the controversy; or (3) [its] absence would expose existing parties to substantial risk of double or inconsistent obligations." *Safeco Ins. Co.*, *supra*, 36 F.3d at 546; Fed.R.Civ.P. 19(a).

If the party is necessary, then, under Rule 19(b), I determine if it is indispensable by considering whether: 1) a judgment rendered in the party's absence would prejudice the available party; 2) such prejudice could be lessened or avoided; 3) a judgment rendered in the party's absence would be adequate; and 4) the plaintiff has an adequate remedy if the action is dismissed for nonjoinder. *Soberay*, *supra*, 181 F.3d at 764.

Here, Hickory Hill is a necessary party. As previously discussed, invalidation of one of the intertwining contracts could create inconsistent obligations for the parties. Moreover, because Hickory Hill has an interest as a party with rights and obligations under the tripartite agreement, disposition in its absence would prevent it from protecting its interest.

Hickory Hill, additionally, is not a dispensable or nominal party. Due to the intertwined obligations created by the three contracts, NFC could not obtain an adequate remedy if the action was dismissed for nonjoinder.

Comerica contends that Hickory Hill's poor financial condition renders it dispensable. Comerica relies on *Stonybrook Tenants Ass'n Inc. v. Alpert*, 194 F.Supp. 552, 559 (D.Conn. 1961), where the court found an insolvent company dispensable because it had already performed its duties under a contract, had no interest in the asserted claims and could not provide a remedy. The court in *Stoneybrook*, however, noted that courts should use practical considerations, including the implications regarding the solvency of a forum defendant, when determining whether it is necessary or indispensable to the action. *Id*. at 557-58. Here, Hickory Hill's insolvency has no practical effect given NFC's request solely for a declaratory judgment.

I find the reasoning articulated in *Bellone*, *supra*, 748 F.Supp. at 438, to be instructive. In *Bellone*, the court concluded that the forum defendant was not a nominal or dispensable party, despite the fact that it lacked any assets. *Id*. Rejecting the claim that its jurisdiction is premised on the "strength or weakness of a given defendant's financial statements," the court explained if that were true, then "a great number of cases now pending in the federal courts of this country would be improper due to the fact that some or all of the defendants in those suits are judgment-proof." *Id*. at 437.

Here, like the non-diverse defendant in *Bellone*, Hickory Hill is still a legal corporation and has not, despite its financial difficulties, undergone formal liquidation *via* bankruptcy proceedings or otherwise. It, furthermore, is a critical party due to the intertwined nature of the three contracts

at issue. For these reasons, I conclude that Hickory Hill is an indispensable party which I cannot ignore when determining subject matter jurisdiction.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT plaintiff NFC Acquisition, LLC's motion to remand [Doc. 7] be, and the same hereby is granted.

So ordered.

            s/James G. Carr
            James G. Carr
            Chief Judge